Bradley MILLER, Plaintiff,

v.

KENWORTH OF DOTHAN, INC., Defendant.

No. CIV.A. 98–D–1063–S.

United States District Court,
M.D. Alabama,
Southern Division.

May 16, 2000.

M. Adam Jones, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, Nancy Catherine Smith Pitman, Banks Thomas Smith, Hall & Smith, Dothan, AL, for plaintiff.

David B. Anderson, David B. Walston, Kary B. Wolfe, Walston, Wells, Anderson & Bains, LLP, Birmingham, AL, for defendant.

### MEMORANDUM OPINION
### AND ORDER

DE MENT, District Judge.

Before the court are Plaintiff Bradley Miller's ("Plaintiff") Motion For Attorney's Fees And Costs ("Mot."), filed November 29, 1999, and Plaintiff's Supplemental Motion For Attorney's Fees And Costs ("Suppl.Mot."), filed January 21, 2000. On January 24, 2000, Defendant Kenworth of Dothan, Inc. ("Defendant") filed a Brief In Opposition, in which Defendant objects to Plaintiff's Motion and Supplemental Motion. The court construes Defendant's Brief In Opposition as a Response ("Resp."). Plaintiff filed a Reply on February 2, 2000. After careful consideration of the arguments of the Parties, the applicable law and the record as a whole, the court finds that Plaintiff's Motion and Supplemental Motion are due to be granted in part and denied in part and that Plaintiff is entitled to fees and costs in the amount of $33,458.07.

### I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND [1]

On September 21, 1998, Plaintiff commenced this employment discrimination lawsuit against Defendant. Plaintiff's Complaint contained two counts. First, Plaintiff alleged that he was subjected to harassment on the basis of his race, which resulted in a hostile work environment ("hostile work environment claim"). Second, Plaintiff asserted that he was terminated in retaliation for threatening to sue Defendant for condoning the hostile work environment ("retaliation claim"). Plaintiff brought his claims under 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964, as amended) ("Title VII") and 42 U.S.C. § 1981 (Civil Rights Act of 1866) (" § 1981").

The trial of this case commenced on November 1, 1999. At the close of Plaintiff's evidence, Defendant orally moved for judgment as a matter of law ("Rule 50(a) Motion") on both counts. *See* Fed. R. Civ. P. 50(a). The court reserved ruling. At the close of all the evidence, Defendant again moved for judgment as a matter of law. The court heard arguments, reserved decision and submitted the case to the jury subject to the court later deciding the legal questions raised by the Rule 50(a) Motion.

On November 3, 1999, the jury returned a verdict in favor of Plaintiff on his hostile work environment claim and in favor of Defendant on Plaintiff's retaliation claim. The jury awarded $25,000 in compensatory damages and $50,000 in punitive damages. Thereafter, the court ordered that the trial be transcribed to allow the Parties to brief the issues argued by Defendant in support of its Rule 50(a) Motion. After receiving briefs, the court denied Defendant's Rule 50(a) Motion. *See Miller v. Kenworth of Dothan, Inc.*, 82 F. Supp.2d 1299 (M.D.Ala. 2000). The court entered judgment in the amount of $75,000 on December 29, 1999.

Because Plaintiff obtained a favorable verdict on his hostile work environment claim, he filed the instant Motion For Attorney's Fees And Costs. Therein, Plaintiff requests attorney's fees in the amount of $35,162.50 and submits a Bill of Costs in the amount of $3,789.39. Plaintiff seeks attorney's fees for the legal work his counsel performed in this case from December 18, 1997 to November 12, 1999. The attorneys who represented Plaintiff were Banks T. Smith ("Smith") and M. Adams Jones ("Jones") of the law firm, Hall & Smith in Dothan, Alabama. Smith asks for attorney's fees at an hourly rate of $200 for 120 hours of work he performed in this case. Jones, who claims 89.3 hours in the prepa-

---

**1.** The procedural history and factual background of this case are set out in greater detail in the court's Memorandum Opinion And Orders entered in this case on October 5, 1999, and January 10, 2000, the latter of which may be found at *Miller v. Kenworth of*

*Dothan, Inc.*, 82 F.Supp.2d 1299 (M.D.Ala. 2000). Here, the court recites an abbreviated version of the procedural history and facts and then focuses on the facts relevant to the issues of attorney's fees and costs.

ration and trial of this case, seeks payment at an hourly rate of $125.

On January 21, 2000, Plaintiff filed a Supplemental Motion For Attorney's Fees And Costs. In his Supplemental Motion, Plaintiff requests additional attorney's fees in the amount of $3,245 for fees incurred after November 12, 1999, plus $35.05 for related costs. Plaintiff claims these additional fees for responding to Defendant's Rule 50(a) Motion. (Suppl.Mot.¶ 4.) Specifically, Smith claims an additional 3.1 hours at $200 per hour, while Jones claims an additional 21 hours at $125 per hour.

Thus, the breakdown of Plaintiff's request for attorney's fees outlined in his Motion and Supplemental Motion is as follows:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Smith | $200 | 123.1 | $24,620.00 |
| Jones | $125 | 110.3 | $13,787.50 |
| | | | $38,407.50 |

In support of his attorney's fee request, Plaintiff submits a joint Affidavit from Smith and Jones ("Smith & Jones Aff."). Therein, Smith establishes that he has 14 years experience as an attorney and that "[t]he last eight years of [his] practice has concentrated in the area of civil rights matters." (Smith & Jones Aff. at 11–12.) He further attests that he has "handled well over forty (40) civil rights case[s], most of which have been employment law cases." (Id. at 12.) Jones, on the other hand, is a recent law school graduate and initially performed work in this case as a law clerk/paralegal. After graduating and becoming licensed to practice law, Jones continued to assist Smith in the representation of Plaintiff. Regarding his experience, Jones states as follows:

> I ... have been in the private practice of law for two (2) months. Civil rights litigation has become the primary focus of my practice over the past (2) months. My civil rights litigation has included experience representing plaintiffs in the area of employment litigation, with at least twelve (12) civil rights cases. (Id.)

As evidence in support of the hourly rates requested, Plaintiff offers Affidavits from two attorneys: (1) Bobbie Crook ("Crook"); and (2) Malcolm Newman ("Newman"). Crook and Newman's law offices are based in Dothan, Alabama, and both Crook and Newman are admitted to practice in this court. Newman has been licensed to practice law since 1982, and Crook since 1987. (Newman Aff. at 1; Crook Aff. at 1.) Crook and Newman's practices include "civil rights litigation in both Federal and state court." (Id.)

As to the hourly rate Crook charges, he states as follows: "I am currently billing at a rate of Two Hundred Dollars ($200.00) per hour for plaintiffs in civil rights cases. I believe that this is [within] the prevailing range of fees in the relevant market. I have or am currently handling forty (40) civil rights cases." (Crook Aff. at 2.) Newman, in turn, states that he "currently bill[s] at a rate of One Hundred Seventy-Five Dollars ($175.00) per hour for plaintiffs in civil rights cases." (Newman Aff. at 2.) According to Newman, $175.00 to $225.00 "is the prevailing range of fees in the relevant market." (Id.)

Furthermore, both Crook and Newman state that they are "familiar" with the "reputation and work" of Smith and Jones. (Crook Aff. at 2; Newman Aff. at 2.) "[G]iven the nature of the case and the experience of the attorneys involved," Crook and Newman opine that $200.00 per hour for Smith and $125 per hour for Jones are not "excessive" fees. (Id.)

To substantiate the number of hours Smith and Jones worked in this case, Plaintiff attaches to his Motion two itemized billing statements, one for Smith and one for Jones. The billing statements list the tasks performed by Smith and Jones and the time expended on each task. For example, the billing statements outline each of the various litigation tasks, from preparing the EEOC charge, drafting the

Complaint and conducting discovery to trying the case. Smith's billing statement contains 71 entries with a total time of 120 hours. The 25 entries on Jones' billing statement reflect that he expended a total of 89.3 hours on this case. The additional hours requested in Plaintiff's Supplemental Motion increase Smith's hours to 123.1 and Jones' hours to 110.3.

Countering Plaintiff's Affidavits are two Affidavits filed by Defendant from William C. Carn, III ("Carn") and Elizabeth Glasgow ("Glasgow"). Carn and Glasgow are attorneys who specialize in civil rights litigation and maintain offices in the Dothan, Alabama area. Carn has been licensed to practice law since 1978 and has "extensive experience in civil rights litigation under Title VII" and § 1981. (Carn Aff. at 1.) Carn states as follows:

> From my experience and conversations with colleagues that practice in the civil rights and employment law arena, the prevailing rate for attorneys with Mr. Smith's experience is within a range of $125.00 per hour to $150.00 per hour. The prevailing rate for associate attorneys who practice in the civil rights arena that have been out of law school for two months, is within a range of $85.00 to $95.00 per hour.

(*Id.* at 2.)

Similarly, Glasgow, who practices with the law firm of Farmer, Price, Hornsby & Weatherford in Dothan, Alabama, states as follows:

> [T]he prevailing rate for employment law attorneys in Houston County who charge by the hour are as follows:
>
> a. Attorneys with one to three years experience charge $85 to $95 per hour plus expenses;
>
> b. Attorneys with mid-level experience charge $100 to $125 per hour plus expenses;
>
> c. Senior attorneys generally charge $150.00 per hour plus expenses.

(Glasgow Aff. at 1.) However, Glasgow states that her law firm charges "somewhat higher at $100 per hour for new attorneys, $125 per hour for mid-level attorneys and $175 for senior attorneys." (*Id.* at 2.)

## II. DISCUSSION

Plaintiff moves the court to order Defendant to pay his attorney's fees and costs incurred in this litigation. First, the court addresses Plaintiff's request for attorney's fees. Second, the court examines the Bill of Costs submitted by Plaintiff.

### A. Attorney's Fees

As stated previously, Plaintiff asks the court to award attorney's fees in the amount of $38,407.50. In requesting attorney's fees, Plaintiff relies on 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e–5(k). Pursuant to 42 U.S.C. § 1988(b), a district court, in its discretion, may award reasonable attorney's fees to the prevailing party in actions brought under § 1981. Similarly, 42 U.S.C. § 2000e–5(k) is the statutory provision authorizing a district court to award attorney's fees to prevailing parties in Title VII cases.

Defendant acknowledges that Plaintiff is a prevailing party because he achieved "some of the benefit" he sought by filing suit. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). While Defendant does not dispute Plaintiff's status as a prevailing party, Defendant raises three primary objections to Plaintiff's fee request. First, Defendant opposes the hourly rates submitted by Plaintiff. Second, Defendant lodges objections against some of Smith's billing items, asserting that the billed hours are excessive for the tasks performed. Third, Defendant argues that the court must reduce the total fee award because Plaintiff obtained a favorable jury verdict on only one of his two claims. The court addresses each of Defendant's arguments separately herein.

#### 1. Standards For Awarding Attorney's Fees

The standards for calculating the amount of attorney's fees to award prevailing parties in civil rights litigation under Title VII and § 1981 are set forth in *Nor-*

*man v. Housing Auth. of City of Montgomery,* 836 F.2d 1292 (11th Cir.1988).[2] *See also City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (holding that the same legal standards are used to determine a "reasonable" attorney's fee in all cases in which a federal statute authorizes an award of attorney's fees to a prevailing party).

■ The Supreme Court has established that the "lodestar" approach is the appropriate method of determining a reasonable attorney's fee for the prevailing party. *See Norman,* 836 F.2d at 1299 (citing *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933). Under this approach, the "starting point" requires the court to determine the "lodestar" figure. *Id.* The "lodestar" figure equals the reasonable hourly rate multiplied by the hours reasonably expended and represents a presumptively reasonable fee. *Id.; see also Delaware Valley Citizens' Council,* 478 U.S. at 565, 106 S.Ct. 3088.

■ An hourly rate is reasonable if it "is the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. The fee applicant has the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *See Coastal Fuels Marketing, Inc. v. Florida Exp. Shipping Co., Inc.,* 207 F.3d 1247, 1252 (11th Cir.2000); *see also Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994). "[A] movant may meet his burden by producing either direct evidence of rates charged under similar circumstances or opinion evidence of rea-

sonable rates." *Duckworth v. Whisenant,* 97 F.3d 1393, 1395 (11th Cir.1996) (citing *Norman,* 836 F.2d at 1299). Where a plaintiff relies on opinion evidence, "[t]he weight to be given" such evidence "will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Norman,* 836 F.2d at 1299. However, where there is a lack of documentation, a district court may make an independent judgment based on its own experience and knowledge concerning the rates charged by lawyers of similar skill in similar lawsuits in the same market area. *See id.* at 1303.

■ Moreover, the Eleventh Circuit in *Norman* stated that the factors set forth in *Johnson, supra* n. 2, are useful for determining a reasonable hourly rate. *See Norman,* 836 F.2d at 1299–1300 ("In evaluating comparability of the market rates being attested to," courts "may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court as they may affect the weight to be given to the comparables being offered the court."); *see also Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1340 (11th Cir.1999). The twelve *Johnson* factors are as follows: (1) the "time and labor required"; (2) the "novelty and difficulty of the questions"; (3) the "skill requisite to perform the legal services properly"; (4) the "preclusion of other employment by the attorney due to acceptance of the case"; (5) the "customary fee for similar work in the community"; (6) the existence of a contingent-fee contract[3]; (7) "time limitations imposed by

2. The *Norman* court incorporates the standards articulated by the Supreme Court of the United States in *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v.*

*Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In calculating a reasonable fee, the *Norman* court also included the oft-cited standard articulated by the Old Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). *See Norman,* 836 F.2d at 1298–99.

3. The court notes that the Supreme Court of the United States has cast doubt on the rele-

the client or the circumstances"; (8) the amount of damages and type of relief involved and the results obtained; (9) the "experience, reputation, and ability of the attorneys"; (10) the "'undesirability' of the case"; (11) the "nature and length of the professional relationship with the client"; and (12) "[a]wards in similar cases." *Johnson,* 488 F.2d at 717–19. Once the court has established a range in the prevailing market rates, the court should estimate the reasonable hourly rate based on an assessment of the skill demonstrated by the attorneys in the case. *See Norman,* 836 F.2d at 1300.

■ After determining the reasonable hourly rate, the court must ascertain whether the hours expended by the prevailing party are reasonable and, thus, compensable. *See id.* at 1301. In setting forth the hours expended, the fee applicant

must exercise what the Supreme Court has termed "billing judgment." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). That means they must exclude from their fee applications "excessive, redundant, or otherwise unnecessary [hours]," *id.,* which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman,* 836 F.2d at 1301 .... If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary."

*American Civil Liberties Union v. Barnes,* 168 F.3d 423, 428 (11th Cir.1999). "Because reducing the hours claimed requires the court's precision, the law in this circuit

commands that both the proof of the hours spent in litigation and any corresponding objections posed be voiced with a similar exactitude." *Duckworth,* 97 F.3d at 1397 (citing *Norman,* 836 F.2d at 1301).

When the court "has determined the number of hours reasonably expended on the case and a reasonable hourly rate for compensation, those two figures are multiplied to produce the 'lodestar' calculation." *Davis v. Locke,* 936 F.2d 1208, 1215 (11th Cir.1991). "This lodestar 'provides an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1491 (11th Cir.1994) (quoting *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933).

■ However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 (footnote omitted). For example, "where the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. 1933.

### 2. Reasonable Hourly Rate

Applying the foregoing principles, the court must ascertain the hourly rate to charge for Plaintiff's representation by Smith and Jones. Plaintiff has requested $200 per hour for the work performed by Smith, the lead counsel, and $125 per hour for secondary counsel, Jones. Defendant contends that these rates are higher than

---

vancy of this *Johnson* factor in determining the reasonableness of a fee award. *See Dague,* 505 U.S. at 565, 112 S.Ct. 2638 (holding that "no contingency enhancement whatever is compatible with the fee-shifting statutes"); *see also McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1186 (11th Cir.1993); *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in*

*part on other grounds,* 984 F.2d 345 (9th Cir. 1993) (holding that *Dague* represents an outright rejection of contingency contracts as a factor relevant to the establishment of a reasonable fee). Based on the dubious validity of this factor, the court has not considered the existence or not of a contingency-fee contract in determining the reasonable hourly rate and fee to award in this case.

those typically awarded to attorneys with comparable skill and experience in the relevant market. Further, as to Jones, Defendant claims that a portion of the hours billed by Jones occurred prior to him becoming a licensed attorney in the State of Alabama: "24 hours of Mr. Jones' time is allocated to work he performed in August 1999. Mr. Jones was not admitted to practice law until September 1999. There is no evidence before the court to support an hourly rate of $125 per hour for a law clerk." (Resp. at 6.) In response, Plaintiff concedes that "the court should adjust the rate" for the 24 hours Jones expended on the case before he was "admitted to the bar." (Reply at 10.)

Accordingly, the court must determine the reasonable hourly rates to award for Smith's representation and for the work performed by Jones as an attorney and by Jones as a law clerk/paralegal. For the reasons that follow, the court finds the ranges of prevailing market rates to be $125 to $225 per hour for Smith, $85 to $95 per hour for Jones' work as an attorney, and $50 to $70 per hour for Jones' work as a law clerk/paralegal. As discussed below, the court bases its findings on its own experience and knowledge of prevailing market rates, *see Norman*, 836 F.2d at 1303, the evidence submitted by the Parties, the respective levels of experience and abilities of Smith and Jones, and fee "awards made in similar cases." *Johnson*, 488 F.2d at 719. As further discussed below, the court finds that, within the ranges of prevailing market rates, the reasonable hourly rates are $175 for Smith, $90 for Jones' work as an attorney, and $70 for the tasks Jones performed as a law clerk/paralegal.

### a. Determining The Ranges Of Prevailing Market Rates

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The relevant community for determining the range of prevailing market rates "is that of the place where the case is filed." *Cullens*, 29 F.3d at 1494 (rejecting the plaintiffs' argument that "the relevant market for the hourly rate to be used in the computation of the lodestar figure" was Atlanta, Georgia, the situs to which the case was transferred, and holding that the district court did not err in examining hourly rates of attorneys in Macon, Georgia, the city where the cases was filed); *see also Barnes*, 168 F.3d at 436. Because Plaintiff filed his case in Montgomery, Alabama, the court finds that the area in and surrounding Montgomery is the relevant community to which the court should look.[4] *See Black v. M.G.A., Inc.*, 51 F.Supp.2d 1315, 1321 (M.D.Ala.1999) (finding that the relevant legal community for a case filed in the Middle District of Alabama, Southern Division, was Montgomery, Alabama, and declining to consider fees outside the district).

Here, neither Plaintiff nor Defendant submitted evidence of hourly rates of attorneys with offices in Montgomery, Alabama. Rather, the Parties limit their evidence to rates in and near Dothan, Alabama. For the following reason, the court finds that Plaintiff and Defendant's respective Affidavits from Crook, Newman, Carn and Glasgow are appropriate for the court to consider in determining the relevant prevailing market rates. Namely, each of these attorneys has an active civil rights practice, which includes

---

4. The court notes that, in submitting evidence of prevailing market rates, Plaintiff argues that the relevant community is the State of Alabama, and, thus, "[t]he market rates in Dothan, Birmingham, and Montgomery are clearly appropriate in this matter." (Smith & Jones Aff. at 3.) On the other hand, Defendant

contends that the court must limit its inquiry to the "Dothan, Alabama legal market." (Resp. at 5.) Based on *Cullens*, the court finds that Plaintiff has expanded too broadly the relevant community and that Defendant has limited too narrowly the relevant community.

litigation in federal court. Civil rights cases arising in the Dothan area and litigated in federal court must be filed in Montgomery, Alabama, the district which encompasses Dothan, Alabama, i.e., the Southern Division. Because a portion of Crook, Newman, Carn and Glasgow's respective civil rights litigation extends to Montgomery, Alabama, the court finds that these attorneys are part of the relevant community. Alternatively, the court finds that the fee evidence submitted by Crook, Newman, Carn and Glasgow represents persuasive authority as to the prevailing market rates in Montgomery, Alabama.

Now, the court turns to the evidence submitted by the Parties as to the suggested range of prevailing market rates for attorney's with comparable experience as Smith and Jones.

### i. Smith

■ As to Smith, Plaintiff's evidence reflects that the prevailing market rates in the relevant community for civil rights attorneys with experience comparable to Smith range between $175 to $225 per hour. According to Defendant's evidence, the prevailing market rates fall within a range of $125 to $150 per hour for a civil rights attorney with Smith's experience. For three reasons, the court finds that Plaintiff and Defendant's evidence span the range of prevailing market rates for Smith's representation in this case. In other words, the court finds that the range espoused by Defendant falls at the lower end of the range and that Plaintiff's evidence is within the mid- to upper-range of hourly fees for attorneys in the relevant community with comparable experience and law practices as Smith. *See Norman,* 836 F.2d at 1300 (stating that "typically the fee applicant asks for rates approximating the highest charged in the community, whereas the fee opponent generally submits evidence of the lowest rate charged in any part of the community").

First, the court is guided by its knowledge of and experience with prevailing market rates in the community for representation in similar civil rights cases. *See Norman,* 836 F.2d at 1303. Second, the court is knowledgeable of and has examined other non-contingent fees awarded in similar litigation in cases filed in the Middle District of Alabama. Third, the court has considered the years of experience and ability of Smith in determining the applicable range of prevailing market rates. Smith is well experienced in civil rights litigation. He has been engaged in the private practice of law for 14 years. For the past eight years, Smith has focused on civil rights cases and has handled more than 40 such cases. (Smith & Jones Aff. at 11–12); *see also Coleman v. Cannon Oil Co.,* 911 F.Supp. 510, 515 (M.D.Ala.1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"). Based on these factors, the court finds that hourly rates between $125 and $225 constitute the range of prevailing market rates charged by attorneys in civil rights litigation with approximately the same experience and skill as Smith.

### ii. Jones

■ Jones performed work both as a law clerk and as an attorney. Regarding Jones' work as an attorney, Plaintiff has not submitted evidence of the range of prevailing market rates in the relevant community for attorneys practicing civil rights litigation in comparable cases with experience similar to Jones. Rather, Plaintiff has merely offered Affidavits from Crook and Newman that, in their opinions, $125 an hour is a reasonable rate. On the other hand, Defendant has offered Affidavits from Carn and Glasgow who attest that the range of prevailing market rates for an associate civil rights attorney who has "been out of law school for two months ... is within a range of $85.00 to $95.00 per hour." (Carn Aff. at 2; *see also* Glasgow Aff. at 1.) For the reasons that follow, the court agrees with Defendant's evidence concerning the range of prevailing market rates.

First, the court finds that Crook and Newman's opinions that $125 is a reasonable rate are not at helpful at all in ascertaining the range of prevailing market rates for new attorneys. As explained in *Norman*, "[t]estimony that a given fee is reasonable is . . . unsatisfactory evidence of market rate." 836 F.2d at 1299 (citing *Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. 1933). Thus, in determining a reasonable hourly fee, the court has not considered Plaintiff's evidence.

Second, based on the court's knowledge of prevailing market rates for new attorneys practicing civil rights litigation in this area and based on its own observations of counsel, *see Norman*, 836 F.2d at 1303, the court finds that an hourly rate of $125 is not justified and is outside the range of the prevailing market rates. *Compare Owens v. Ryder Services Corp.*, 918 F.Supp. 366, 367 (N.D.Ala.1996) (stating that a fee request of "$135.00 per hour is too much for a first-year associate"). Although the court finds that Jones performed his services well, this case was one of the first civil rights cases, if not the first, that Jones worked on as an attorney. *See Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F.Supp. 1061, 1071 (M.D.Ala.1988) (finding that an attorney's "inexperience should be reflected in" a lower "hourly rate"), *aff'd*, 891 F.2d 842 (11th Cir.1990).

Third, the court finds that Defendant's evidence of $85.00 to $95.00 reflects the range of prevailing market hourly rates in the community for an attorney whose experience as an attorney and in the civil rights arena is similar to Jones. The court bases its findings upon the limited experience and qualifications of Jones and the court's understanding of the prevailing market rates in this geographic area, coupled with the Affidavits submitted by Defendant. In particular, the court finds that Carn and Glasgow have substantial knowledge of prevailing market rates for attorneys with experience similar to Jones.

The court bases the latter finding upon "the type of casework" in which Carn and Glasgow specialize and upon their "experience." *Duckworth*, 97 F.3d at 1396.

 Jones also performed 24 hours of work in Plaintiff's case as a law clerk/paralegal. Reasonable attorney's fees include the compensation of paralegals and law clerks at the prevailing market rate. *See Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). However, "[a] prevailing party may be compensated for work done by law clerks or paralegals only to the extent that such work is 'traditionally done by an attorney.'"[5] *Black*, 51 F.Supp.2d at 1324 (quoting *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)).

While Defendant argues and Plaintiff admits that Jones' fee for these 24 hours should be billed at the rate of a law clerk or paralegal, there is no evidence in the record of the prevailing market range of rates for such services. Rather, in adjusting the rate, Plaintiff merely asks the court to "take under consideration the significance, complexity and quality of the work performed." (Reply at 10.)

As previously stated, Plaintiff, as the fee applicant, has the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *See Coastal Fuels Marketing, Inc.*, 207 F.3d at 1252. As pointed out by Defendant, Plaintiff has produced no such evidence and has not even suggested an hourly fee for the services of Jones as a law clerk/paralegal. However, "where documentation or testimonial support is lacking, the court may make the award on its own experience." *Id.* Thus, the court determines the prevailing market range of rates based on its knowledge of the current prevailing market rates for paralegal and law clerk skills in the type of litigation at issue. The court also makes this deter-

---

5. There is no dispute, and the court so finds, that the legal research and writing Jones per-formed as a law clerk constitute the type of work that lawyers typically perform.

mination after reviewing awards for paralegal work in similar cases. *See Ramsey v. State of Alabama Public Serv. Com'n,* 2000 WL 426187, *10 (M.D.Ala. April 13, 2000) (awarding paralegal fees at the rate of $65 per hour); *Black,* 51 F.Supp.2d at 1325 (awarding $65 per hour for paralegal work); *White v. Alabama,* 1998 WL 60938, *12 (M.D.Ala.1998) (awarding $60 per hour for paralegal work); *Reynolds,* 926 F.Supp. at 1459 (awarding $65 per hour for paralegal work); *Coleman,* 911 F.Supp. at 517 (finding that requested hourly rates between $50 and $70 for work performed by paralegals were "reasonable"). Based on the court's knowledge and the aforementioned case law, the court finds that fees between $50.00 and $70.00 per hour constitute the range of prevailing market rates for a law clerk/paralegal.

### b. Determining A Reasonable Rate Within The Range Of Prevailing Market Rates

Within the range of the prevailing market rates and based upon Smith and Jones' respective experience, ability and skill in the civil rights arena, the court finds that reasonable rates are $175 per hour for Smith, $90 per hour for Jones' work as an attorney and $70 per hour for Jones' work as a law clerk/paralegal. *See Norman,* 836 F.2d at 1300. In awarding these hourly rates, the court places particular emphasis on the experience level and skill of the attorneys, as well as the court's knowledge of the hourly rates of attorneys in the relevant community with similar experience and legal practices as Smith and Jones. *See Norman,* 836 F.2d at 1300. Based on their experience, as discussed in the preceding section, the court finds that both Smith and Jones exhibited good skills in the organization, preparation and presentation of Plaintiff's case. *See Johnson,* 488 F.2d at 718 (In examining an attorney's skill, "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained

from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration."); *see also Norman,* 836 F.2d at 1300 ("[T]he word 'skill' incorporates the notion of organization and efficiency.").

In sum, based upon the foregoing, the court finds that Smith and Jones' experience and skill warrant attorney's fees at hourly rates in the middle of the prevailing market ranges. Further, based on Jones' experience and skill, the court finds that, during the period Jones worked on this case as a law clerk/paralegal, he is entitled to an hourly fee at the top of the range of the prevailing market rates. In so finding, the court emphasizes that, during this time, Jones was a step away from being a licensed attorney in the State of Alabama. Namely, Jones had obtained a law degree, had taken the Alabama State Bar examination and was awaiting the Bar results.

### 3. Reasonable Hours

Plaintiff has requested compensation for 233.4 hours, comprised of 123.1 hours of Smith's time, 86.3 hours of Jones' time as an attorney, and 24 hours of Jones' time as a law clerk/paralegal. The court must now determine whether 233.4 hours constitute a reasonable number of hours expended in this case. *See Barnes,* 168 F.3d at 428.

"Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Defendant "does not challenge the hours detailed by [ ] Plaintiff's counsel as redundant or unnecessary." (Resp. at 7.) However, Defendant contends that "several of the time entries by" Smith "are excessive for the work performed."[6] (*Id.*) Specifically, Defendant challenges as excessive the following hours submitted by Smith:

---

**6.** The court notes that Defendant has not objected to the hours billed by Jones, and that, based upon the court's independent review of

same, the court finds that all hours expended by Jones are reasonable.

| Date | Description | Hours |
|------|-------------|-------|
| 2/06/98 | Prepare EEOC charge | 1.0 |
| 9/17/98 | Prepare summons & complaint; Letter to client | 2.5 |
| 9/18/98 | File summons & complaint & certified mail service | .5 |
| 2/25/99 | Interrogatories & request for production | 2.0 |
| 6/10/99 | Prepare deposition notices | 1.0 |
| 6/16/99 | Prepare & serve two amended deposition notices | 1.0 |
| 6/17/99 | Attend Laura Box's deposition | 2.0 |
| 6/17/99 | Attend Randy Galpin's deposition | 2.0 |
| 6/29/99 | Attend David Brooks' deposition | 1.5 |
| 6/29/99 | Attend Andrew Thurmond's deposition | 1.0 |

(Resp. at 7–8.) Now, the court addresses each of Defendant's objections.

Defendant asserts that Smith's four line entries accounting for the time allotted for the depositions of Laura Box ("Box"), Randy Galpin ("Galpin"), David Brooks ("Brooks") and Andrew Thurmond ("Thurmond") are "simply incorrect." (Resp. at 9.) Defendant has submitted an Affidavit from David A. Walston ("Walston"), one of Defendant's attorneys who was present at these four depositions. Walston represents the approximate starting and ending times of the depositions to be as follows: (1) Box, 1:00 p.m. to 1:45 p.m.; (2) Galpin, 3:00 p.m. to 3:20 p.m.; (3) Brooks, 10:07 a.m. to 10:45 a.m.; and (4) Thurmond, 10:48 to 11:30 a.m. (Walston Aff. ¶ 4.)

In response, Plaintiff argues that the court should not restrict the award of attorney's fees to the actual time of each deposition. In support of his argument, Plaintiff sets forth two grounds. First, Plaintiff asserts that Smith "was forced to clear his calendar of any and all appointments during the times in which he reasonably anticipated being in said depositions." (Reply at 9.) Second, Plaintiff states that "there is a great deal of preparation which occurs both before and during each deposition," and "it is the habit of [Smith] to review notes taken during a deposition immediately after its conclu-

sion." (*Id.*) For the following reasons, the court disagrees with Plaintiff's arguments and reduces Smith's compensable time as to these four contested line entries to the actual times of the depositions.

■ First, Plaintiff has not submitted any authority, nor has the court's independent research revealed any, which supports his assertion that counsel should be compensated for the expected or anticipated duration of a deposition, rather than the actual time. *See, e.g., Alonso v. Union Oil Co. of California*, 71 F.R.D. 523, 525 (S.D.N.Y.1976) ("A reasonable fee for an attorney's attendance at a deposition is allowed to compensate him for the actual time involved in taking the deposition and the time necessarily lost in rendering services on other matters. It is not intended to be a portal-to-portal charge for his total time out of the office."). The court finds that applying Plaintiff's reasoning would lead to subjective and illogical results in the determination of the number of reasonable hours expended. In short, Plaintiff's argument is not persuasive.

■ Second, the court rejects Plaintiff's argument that the additional time allotted for the depositions encompasses preparation time, because Smith's billing statement contains a separate two-hour entry for "Deposition Preparation." Thus, Smith has already accounted for and billed his preparation time. To do so again would result in double counting. Additionally, the court notes that Smith's billing entries for Box, Galpin, Brooks and Thurmond's depositions specifically recount that the time billed is solely for "attend[ing]" the depositions, in contrast to the line entry for Plaintiff's deposition, which expressly includes time for both "preparing and attending" the deposition. Based on Smith's description of the four contested line entries, the court finds that Smith intended to bill hours only for the actual time of Box, Galpin, Brooks and Thurmond's depositions.

Alternatively, the court finds that, as to these four contested line entries, Plaintiff has not met his burden of submitting time records which adequately document how his attorney used the block of time allotted. *See Duckworth,* 97 F.3d at 1397. Based on the foregoing, the court finds that "the time claimed is obviously and convincingly excessive under the circumstances." *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir.1988). Consequently, the court finds that the proper billable time for the depositions of Box, Galpin, Brooks and Thurmond is the actual time of the four depositions. Based on Defendant's evidence, this time totals 2.25 hours (i.e., 45 minutes for Box's deposition, plus 20 minutes for Galpin's deposition, plus 38 minutes for Brooks' deposition, plus 42 minutes for Thurmond's deposition). Therefore, the court reduces the total time for these four depositions from 6.5 hours to 2.25 hours.

Moreover, Defendant asserts that .5 hours to file the summons and complaint is excessive. Defendant states that "[a]ny cover letter to the Clerk of Court should have required only one-tenth (.1) of an hour to dictate and a paralegal or legal secretary should have prepared any certified envelope and postage for services, not a $200 an hour attorney." (Resp. at 7–8.) Plaintiff has not addressed Defendant's objection.

■■■■ When reviewing an application for attorney's fees, the court may appropriately consider "whether the work performed was 'legal work in the strict sense' or was merely clerical work that happened to be performed by a lawyer." *Johnson,* 488 F.2d at 717. In other words, attorneys should not receive full compensation for performing services that should have been delegated to non-lawyers. *See Jenkins,* 491 U.S. at 288 n. 10, 109 S.Ct. 2463. The court finds that, other than the dictation of a letter to the clerk, filing a summons and complaint is not work traditionally performed by an attorney, but rather is clerical work. In other words, the court finds that billing .5 hours for filing a sum-

mons and complaint is excessive because some of the work should have been or could have been done by a clerical employee. In this case, the court finds that a 50% reduction is appropriate. Accordingly, the court will allow as compensable time .25 hours, as opposed to the .5 hours requested by Plaintiff.

Further, Defendant argues as excessive the one hour billed "for preparing five initial deposition notices" and the one hour billed for "the preparation of two amended deposition notices." (Resp. at 8.) Defendant points out that "these deposition notices are generic, form notices, differing only in the designated witness and the date and time for the deposition." (*Id.*) In response, Plaintiff states that "[w]hat Defendant does not consider is the amount of time spent by the undersigned reviewing the case file to determine which individuals should be deposed, as well as the date and time on which the depositions should occur." (Reply at 9.) For the following reasons, the court agrees with Defendant in part.

■■■■ The court finds reasonable and will not second guess the twelve minutes billed for the preparation of the initial five deposition notices. *See Norman,* 836 F.2d at 1306 ("[T]he measure of reasonable hours is determined by the profession's judgment of the time that may be consciously billed and not the least time in which it might theoretically have been done."). However, the court finds that the one hour billed by Smith to prepare the two amended deposition notices is excessive. These notices involved a simple time and place amendment to two of the initial deposition notices. The court finds that preparing each amended deposition notice should have taken no longer than the time billed for preparing the original deposition notices, i.e., 12 minutes a piece. Further, to the extent that Smith has billed time for serving the amended deposition notices, the court finds that this task is purely clerical, and, therefore, any time billed for service is not compensable. *See Jenkins,*

491 U.S. at 288 n. 10, 109 S.Ct. 2463; *see also* 2 Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation: Statutory Attorney's Fees*, § 4.6, at 195 (3d ed. 1997) ("[T]he attorneys generally should receive no compensation for time spent on purely secretarial or other nonlegal services, such as serving or filing documents ..., that are appropriately performed by messenger, secretaries, or clerks who services ordinarily are part of a law office's overhead and are not billable to fee-paying client."). In sum, the court finds that a reasonable compensable time for preparing the two amended deposition notices is 24 minutes, not one hour. Therefore, the court reduces Smith's billing time for this task from 1.0 hours to .4 hours.

■ In Defendant's remaining objections, Defendant challenges as excessive the one-hour allotted for the preparation of the EEOC charge, the 2.5 hours billed for drafting the complaint, and the two hours billed for preparing interrogatories and requests for production. The court has carefully considered the Parties' arguments and has conducted an independent review of these contested hours to determine if any of the times charged should be excluded as "excessive." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The court is satisfied that the remaining hours claimed for each contested task are not excessive. *See Perkins*, 847 F.2d at 738 ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances.").

In sum, the hours billed which the court finds excessive are as follows: (1) 4.25 of the hours billed for the depositions of Box, Galpin, Brooks and Thurmond; (2) .25 of the hours billed for filing the summons and complaint; (3) and .6 of the time allotted for preparing two amended deposition notices. The sum of the excessive time totals 5.1 hours. After deducting the excessive 5.1 hours, the court finds that Smith is entitled to fees for 118 hours, that Jones is

entitled to fees for 86.3 hours at an attorney rate and for 24 hours at a law clerk/paralegal rate. The court finds that 228.3 hours, which is the sum of Smith and Jones' compensable time, are " 'hours reasonably expended' " and constitute "billable hours—that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." ' *Perkins*, 847 F.2d at 738 (quoting *Norman*, 836 F.2d at 1301).

### 4. Unadjusted Lodestar

The unadjusted lodestar consists of the product of compensable hours multiplied by the prevailing market hourly rate. Here, the lodestar figure is as follows:

| | Hours | Fee | Dollars |
|---|---|---|---|
| Smith | 118.0 | $ 175 | $ 20,650.00 |
| Jones (attorney) | 86.3 | $ 90 | $ 7,767.00 |
| Jones (law clerk/paralegal) | 24.0 | $ 70 | $ 1,680.00 |
| | | TOTAL | $ 30,097.00 |

### 5. Adjusting The Lodestar

Defendant argues that "a reduction in the lodestar is required" because Plaintiff "prevailed on only one of his two claims, at best a 50% success rate." (Resp. at 10.) Defendant's argument for a reduction is two-fold. First, Defendant states that Smith and Jones' billing statements fail to delineate between the "time or work between the two claims." (*Id.*) Thus, Defendant argues that Plaintiff has not satisfied his burden under *Hensley* of " 'maintain[ing] billing time records in a manner that will enable a reviewing court to identify distinct claims.' " (*Id.*, quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.) Because Plaintiff "has failed to satisfy his burden under *Hensley*," Defendant contends that the court "should decline to award fees to [ ] Plaintiff's counsel." (*Id.* at 11.) Second, Defendant states that, "[s]hould the Court be inclined to award attorney's fee[s] despite [ ] Plaintiff's failure to satisfy his record-keeping burden, the court should ... substantially reduce the lodestar amount given the limited success achieved by [ ] Plaintiff." (Resp. at 11.) In response, Plaintiff argues that his two

claims were so inextricably intertwined that it was impossible to allocate time spent among the two claims. For the following reasons, the court disagrees with Defendant that the lodestar should be reduced.

■ The lodestar figure represents a presumptively reasonable fee. *See Dague,* 505 U.S. at 562, 112 S.Ct. 2638. The court, however, may adjust the lodestar, if necessary, to reflect a plaintiff's overall degree of success, making the award "reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. Thus, "where the plaintiff prevails on only some of his claims, ... special considerations come into play." *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987). After calculating the lodestar figure, "the court can then reduce the lodestar to reflect the plaintiff's partial success." *Id.* "If the claims on which the plaintiff did not prevail and the claims on which he did prevail were 'distinctly different claims ... based on different facts and legal theories,' the court cannot award any fee for services on the unsuccessful claims." *Id.* (quoting *Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933). However,

> [i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

■ Applying these principles to the specific facts of this action, the court finds that this case presents the latter situation discussed in *Hensley.* Here, Plaintiff brought and proceeded to trial on two employment discrimination claims against Defendant under Title VII and § 1981.

First, he alleged that during his employment he was subjected to a hostile work environment based on his race. Second, Plaintiff contended that he was fired in retaliation for threatening to sue Defendant for condoning the hostile work environment.

The court finds that these facts arose from a common core. Namely, Plaintiff claimed that he was subjected to a race-based hostile work environment and that he was fired because he expressed his intent to seek legal relief for said hostile work environment. Plaintiff alleged that the allegations giving rise to the hostile work environment ultimately resulted in his termination. Thus, according to Plaintiff, if he had not voiced opposition to the unlawful hostile work environment, he would not have been fired. In sum, the court finds that these facts are connected, overlapping and integrally related.

Because the court finds that Plaintiff's two claims arose from the same operative facts, it will not require counsel for Plaintiff to allocate their time among the two claims. The court does not consider Plaintiff's action as constituting a series of discreet claims, readily separated for purposes of apportioning hours between prevailing and non-prevailing claims. *See Hensley,* 461 U.S. at 445, 103 S.Ct. 1933.

■ Thus, the court shall focus on the overall results. *See id.* at 435, 103 S.Ct. 1933. The court finds that the jury's award of $25,000 in compensatory damages and $50,000 in punitive damages is a substantial and appreciable award. Although Plaintiff was unable to convince the jury that he had been fired in retaliation for voicing opposition to the hostile work environment, the court finds that Plaintiff's recovery on his hostile environment claim was significant and that "the verdict represented a significant vindication of civil rights." *Failla v. City of Passaic,* 146 F.3d 149, 160 n. 16 (3d Cir.1998). Based on the specific facts of this case, the court finds that the fact that Plaintiff did not prevail on one of his claims does not and should not prohibit Plaintiff from recover-

ing the full amount of the lodestar fee. *See Dunning v. Simmons Airlines,* 62 F.3d 863, 874 (7th Cir.1995) (holding that the district court did not abuse its discretion in awarding plaintiff attorney's fees because claims for retaliation, on which she prevailed, were interrelated to her gender discrimination claim which was dismissed prior to trial).

■ Furthermore, the court finds that Plaintiff "obtained complete relief but was merely unsuccessful on a related claim." *Mallory v. Harkness,* 923 F.Supp. 1546, 1554 (S.D.Fla.1996); *see also Aubin v. Fudala,* 782 F.2d 287, 291 (1st Cir.1986) ("[A] plaintiff should receive significant fees when he has won a partial victory on a civil rights claim while receiving substantially the relief he there sought ...."). When, as here, plaintiffs have secured the results they sought, "courts should award full attorney's fees ...." *Mallory,* 923 F.Supp. at 1554 (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.*

In sum, the court finds that Plaintiff obtained "excellent results" in this litigation. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. Thus, based on the foregoing, the court finds that Plaintiff is entitled to the full lodestar amount.

### 6. One Final Note On The Issue Of Attorney's Fees

Defendant points out that "conspicuously absent" in the record is "any mention" by Plaintiff of the terms of his representation agreement with Plaintiff. (Resp. at

5.) Defendant argues that the terms of the fee arrangement or agreement between Plaintiff and counsel are important in determining the overall reasonableness of the fee award. Thus, Defendant suggests that, if the amount Plaintiff agreed to pay his attorneys is less than the amount determined herein, the court should reduce the award accordingly.

■ The court disagrees with Defendant. District courts are required to make an independent assessment of the reasonableness of the fee irrespective of whether a fee agreement exists. *See Kay v. Apfel,* 176 F.3d 1322, 1326 (11th Cir.1999) ("Courts interpreting" 42 U.S.C. § 1988 "have concluded that the lodestar method is better suited to the courts' independent determination of what constitutes a 'reasonable' fee, and should be applied even where the prevailing party signed a contingency fee contract") (citing *Blanchard,* 489 U.S. at 91–96, 109 S.Ct. 939); *see also Maddow v. Procter & Gamble,* 107 F.3d 846, 853 (11th Cir.1997) (citing *Blanchard, supra,* for the proposition that "evidence of specific details of contingency fee arrangement is not necessary for a court to calculate reasonable attorney's fees; it is at most one factor."). Based on the foregoing, the court finds that the absence in the record of the fee agreement is not an impediment to the court's ability to establish a reasonable attorney's fee.

### B. Reasonable Expenses

In his Motion and Supplemental Motion, Plaintiff asks the court to award $3,824.44 for expenses incurred in connection with this litigation. Plaintiff seeks reimbursement of costs pursuant to 28 U.S.C. § 1920.[7] Attached to Plaintiff's Motion is

---

7. Under 28 U.S.C. § 1920, the district court "may tax" as costs the following expenditures:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

an itemized Bill of Costs listing expenses in the amount of $3,789.39. Further, in his Supplemental Motion, Plaintiff asks for an additional $35.05 for costs incurred for computerized research "in responding to [ ] Defendant's Motion For Judgment As A Matter Of Law." (Suppl.Mot.¶¶ 3, 5.)

Defendant objects to the following costs requested by Plaintiff: (1) photocopying expenses in the amount of $80.20; (2) mileage expenses for travel totaling $242.20; (3) postage expenses in the amount of $105.92; and (4) $35.05 for "legal research expenses incurred for the use of Westlaw." (Resp. at 12–13). Plaintiff has not addressed Defendant's objections in his Reply. For the following reasons, the court agrees with Defendant.

### 1. Photocopying

Pursuant to 18 U.S.C. § 1920, "costs of photocopies necessarily obtained for use in the case are generally taxable." *Daugherty v. The Westminster Schools, Inc.,* 174 F.R.D. 118, 124 (N.D.Ga.1997); *see also* 28 U.S.C. § 1920(4). "[G]eneral copying," however, is not allowed. *Duckworth,* 97 F.3d at 1399. Plaintiff "bears the burden of demonstrating that the copies were reasonably necessary." *Daugherty,* 174 F.R.D. at 124; *see also Corsair Asset Management, Inc. v. Moskovitz,* 142 F.R.D. 347, 352 (N.D.Ga.1992) (finding that "[t]he party seeking the recovery" of photocopying costs "must show that the copies were necessary . . .").

Defendant argues that, although Plaintiff's Bill of Costs "lists photocopying as a cost," Plaintiff "fails to state how that cost was necessary to the case or the nature of the documents copied." (Resp. at 13.) The court agrees.

Plaintiff's Bill of Costs lists $80.20 as recoverable charges for 67 pages of "copying expense[s]" and 200 pages of "[g]eneral copying throughout file." (Mot., Ex. A.) However, Plaintiff has not specified the "purpose" of the photocopies which he seeks to recover as "copying expense[s]" and "general copying throughout [the] file." *Corsair Asset Management, Inc.,* 142 F.R.D. at 353 (disallowing photocopying costs where the plaintiffs "provided no information regarding the purpose or use of any of the photocopies made"); *see also Daugherty,* 174 F.R.D. at 125 (stating that photocopies "made merely for the convenience of" counsel are not recoverable). Because Plaintiff has not demonstrated that the photocopying costs were "necessary" for "use" in the litigation, the court finds that Plaintiff cannot recover these costs. *Id.* at 124.

### 2. Mileage

Reimbursement for travel expenses of attorneys is not provided for in the text of 28 U.S.C. § 1920. *See Grady v. Bunzl Packaging Supply Co.,* 161 F.R.D. 477, 478 (N.D.Ga.1995) ("Explicit statutory authorization is a prerequisite to a federal court's power to shift litigation costs."). Additionally, " 'travel of attorneys is not a taxable cost of taking depositions' " unless " 'extraordinary or compelling circumstances' " exist. *Daugherty,* 174 F.R.D. at 124 (quoting *George R. Hall, Inc. v. Superior Trucking Co., Inc.,* 532 F.Supp. 985, 995 (N.D.Ga.1982)). Plaintiff's Bill of Costs includes $192.20 in costs for counsel's mileage expenses to and from Birmingham for depositions ($124.00) and to and from Montgomery for the pretrial hearing ($68.20). The Bill of Costs also contains a $50 expense "for picking up juror profiles in Montgomery," presumably for travel expenses. Thus, the attorney's travel expenses total $242.20.

The court finds that the distances traveled to and from the depositions are not extreme and that Plaintiff has not demonstrated that the circumstances surrounding these attorney travels are either extraordinary or compelling. Additionally, because § 1920 does not provide that attorney's travel expenses are reimbursable, the court disallows Plaintiff's request for the remaining travel expenses claimed. In sum, the court will not allow Plaintiff to recover costs for mileage and travel in the amount of $242.20.

### 3. Postage

 Pursuant to § 1920, costs for "postage ... are clearly nonrecoverable." *Duckworth*, 97 F.3d at 1399; *see also Corsair Asset Management, Inc.*, 142 F.R.D. at 351 (disallowing costs for postage and express mail expenses because such "costs are not provided for in § 1920"). Accordingly, the court finds that Plaintiff is not entitled to recover $105.92 for postage and express mail costs.

### 4. Computerized Legal Research

 Costs incurred from "computerized legal research" are not recoverable under § 1920. *Duckworth*, 97 F.3d at 1399; *see also Corsair Asset Management, Inc.*, 142 F.R.D. at 353. Thus, Plaintiff's request for costs in the amount of $35.05 for Westlaw legal research is denied.

### 5. Summary Of Expenses

In sum, the court sustains Defendant's objections to Plaintiff's Bill of Costs for photocopying, mileage, postage and computerized legal research. These costs total $463.37. In deducting $463.37 from the $3,824.44, which is the total costs sought by Plaintiff, the court finds that Plaintiff is entitled to recover costs in the amount of $3361.07.

## III. ORDER

Accordingly, for the foregoing reasons, it is CONSIDERED and ORDERED that Plaintiff's Motion For Attorney's Fees And Costs, filed November 29, 1999, and Plaintiff's Supplemental Motion For Attorney's Fees And Costs, filed January 21, 2000, be and the same are hereby GRANTED in part and DENIED in part, as detailed herein, and that Plaintiff recover from Defendant the sum of $28,417 in attorney's fees, $1,680 in law clerk/paralegal's fees, and $3361.07 in costs, for a total of $33,458.07 for which let execution issue.