**Patrick Andrew HART, etc., Plaintiff,**

v.

**GUARDIAN CREDIT UNION,
Defendant.**

**Civil Action No. 2:10cv855–WHA.**

United States District Court,
M.D. Alabama,
Northern Division.

June 29, 2012.

B.J. Wade, Skouteris & Magee, PLLC, Memphis, TN, Eric G. Calhoun, Travis, Calhoun & Conlon, PC, Dallas, TX, Matthew Bruce Alfreds, Nicholas Cole Hughes, Attorney at Law, Montgomery, AL, for Plaintiff.

Chad Wesley Bryan, Capell Howard PC, Montgomery, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

W. HAROLD ALBRITTON, Senior District Judge.

This case is before the court on the Plaintiff's Motion for Award of Attorney's Fees, Reimbursement of Expenses, and Payment of Plaintiff Incentive Award (Doc. # 40).

This is a class action brought against a credit union for violation of a provision of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq. ("EFTA").

The provision violated is found in § 1693b(d), which requires that any person providing automatic teller machine ("ATM") services for a fee to consumers must provide notice of the fee both by posting on or near the machine itself (§ 1693b(d)(3)(B)(i)) and on the screen of the machine, or paper notice from the machine, before the consumer is irrevocably committed to completing the transaction (§ 1693b(d)(3)(B)(ii)).

The civil liability for failure to post either of the required notices is actual damage sustained by the consumer and specified statutory damages of $100 to $1,000 in an individual action and such amount as the court may allow, up to a total cap, in a class action, together with a reasonable attorney's fee (§ 1693m(a)). There is actually no basis for actual damage to a consumer if the required notice is posted on the screen, since the consumer must agree there to pay the fee before the transaction can be completed (§ 1693b(d)(3)(C)). On the other hand, as the Plaintiff alleges in his Complaint, failure to also post notice on or near the machine itself gives rise to strict liability. This is true even though no actual damage was suffered, in spite of the fact that the consumer has agreed to pay the fee rather than using a machine offered for no fee by his own institution which issued his card. The consumer who suffered no damage could, of course, simply advise the ATM provider that he has noticed its failure to post the external notice, so that this omission could be corrected with no one harmed. Or, for some reason, he could file a class action on behalf of himself and others who have suffered no actual damages, but who would be entitled to a small amount of statutory damages based on strict liability, if they should file a claim. The reason, of course, must be the prospect of receiving a "finders fee" in the form of an incentive award for serving as class representative, together with a statutorily required attorney's fee and costs for

the attorney willing to take up the cause. This incentive for filing suit when there has been no actual damage has resulted in class action suits against ATM providers springing up all around the country. This case is one of them.

This lawsuit was filed seeking class action certification for all users of ATM machines owned and operated by Guardian Credit Union ("Guardian") at one location in Montgomery, Alabama, and one in Prattville, Alabama, and who were charged a fee during a one-year period. The Complaint specifically disclaimed any request for actual damages and asked only for statutory damages, an incentive award for the named Plaintiff, and costs and reasonable attorney's fees for his attorneys. Guardian's Answer denied operating the machine at the alleged Prattville location, but gave the address of the actual location of its machine in Prattville, and admitted that its ATM's did not have the required external notices.

Guardian consented to class treatment and a settlement agreement was reached in this case. Guardian agreed to create a settlement fund of $42,500.00. Out of that, the named Plaintiff, Hart, would receive $2,500.00, and every class member who submitted a claim would receive a pro rata share of the fund, but no more than $100.00. Out of any balance, the costs of all required notices would be paid, and then any remaining funds would be distributed as a *cy pres* contribution to a local charitable organization, the Public Safety Insurance Fund. Guardian also agreed to pay additionally such attorney's fees and costs as might be awarded to class counsel by the court.

Agreed notices were sent out and published, resulting in no objections being filed, no opt-outs by any described class members, and only one claim for statutory damages being filed. A fairness hearing was held, and there are no disputed issues left to be resolved except the setting of a reasonable attorney's fee and costs.

So, this is what we have.

According to the Complaint, in July 2010, the individual Plaintiff, Patrick Andrew Hart, went to an ATM owned and operated by Guardian Credit Union, which was not the institution with which he had an account and which issued his card, to get some money. The machine had no legally required exterior notice that he would be charged a fee for the service. He was charged $2.00 for getting the cash. He does *not* allege that the machine did not have the second legally required notice, i.e., notice on the screen that he would be charged $2.00 to get the cash and would have to check off his consent to that before any cash would come out of the machine. Guardian's Answer admitted that it did not have the external notice on the machine, but further stated that users were required to consent to the surcharge before the surcharge was actually imposed. Hart specified that he did not claim any actual damages. From all of that, the court concludes that the required consent notice was on the screen and that he and all members of the class had agreed to pay $2.00 before being able to get cash from the ATM.

Having gotten his money at the agreed cost of $2.00, Hart retained the services of a lawyer to right this wrong, and to help him perform the role of a "private attorney general" in filing a class action on behalf of all others who have had the same experience, since the law encourages such action for the protection of the public. (This is assuming, as the court must, that the public is in need of protection against using an ATM which does not have an external warning that they will be charged a fee, even though they are told on the screen that they will be charged the fee and must

consent to it before the transaction can be completed.)

Not only did this act of vindicating his legal right and the rights of others require the services of *a* lawyer, however, but it is claimed that it reasonably required *four* lawyers, one from Dallas, Texas, one from Memphis, Tennessee, and two separate lawyers from here in Montgomery—and to the tune of $75,338.40.

Now that this case has been settled, with Mr. Hart to receive $2,500 for filing the suit, one claimant to receive $100, and a local charity to receive a substantial amount of money after payment of costs, all for the legal wrong of Guardian Credit Union failing to post an external notice on its ATM's, it is for the court to determine a reasonable fee for Mr. Hart's team of lawyers under all the circumstances.

■ The court considers the almost-identical case of *Gaylor, etc. v. Comala Credit Union*, No. 2:10cv725–MHT, 2012 WL 1987183 (M.D.Ala. June 1, 2012), to be of particular significance in analyzing the issue of what fees and costs are reasonable to be awarded in this case. That class action was filed in this court on August 27, 2010 and randomly assigned to Judge Myron Thompson. This case was filed on October 8, 2010 and randomly assigned to the undersigned. A settlement agreement was reached in *Gaylor* and a joint motion to approve it, with proposed preliminary approval order and forms for notices attached, was filed on November 2, 2011. Likewise, this case was settled and a joint motion to approve the settlement, with proposed order for preliminary approval and forms for notices attached, was filed on November 14, 2011. Fairness hearings in both cases were held, attorney's fees requests were filed, and a final Opinion and Order as to fees was entered in *Gaylor* on June 1, 2012,

The records of this court in *Gaylor* show that the Plaintiff was Danielle Marie Gaylor, individually and on behalf of all other similarly situated, and the Defendant was Comala Credit Union. Ms. Gaylor had the misfortune (or the good fortune as the case may be) of using her ATM card at Comala Credit Union's ATM machine which charged her a $2.00 surcharge and which did not have the exterior notice. This happened in June, 2010, the month before Mr. Hart had the same experience with the Guardian ATM. Ms. Gaylor found the same four lawyers who represent Mr. Hart in this case, and they filed the complaint two months later, in August.

A comparison of relevant documents filed in the two cases shows that those in this case are basically the same as in *Gaylor*, with the text having been merely "copied" and "pasted" with changed names. One illustration of this is that this Complaint on behalf of Mr. Hart refers in paragraph 6 to the suit being filed by "Plaintiff, on behalf of *herself* and all others similarly situated" and seeking relief "on behalf of *herself* and the proposed class," (Doc. #1, ¶6) the same as the Complaint of Ms. Gaylor. Both cases were settled, with the creation of a settlement fund, $42,896.73 in *Gaylor* and $42,500.00 in this case. Both agreed to $2,500 for the named Plaintiff, a $100 cap on claims of class members, and the same charity for *cy pres* distribution. All required class notices were the same. No claims were filed in *Gaylor*, while one was filed in this case.

The same Joint Motion to Approve Class Settlement, with Settlement Agreement and proposed orders attached, was filed in both cases, in *Gaylor* on November 2, 2011, and in this case on November 14, 2011 with names and amounts changed, with one notable exception which illustrates the "copy and paste" aspects of this case. The proposed Judgment and Final Order of Dismissal attached as Exhibit D

to the Settlement Agreement submitted with the Joint Motion to Approve Class Settlement (Doc. # 33) filed in this case of Mr. Hart's stated that "the claims of Class Representative *Danielle Gaylor* are typical...." *Id.* at ¶ 8. The same basic Preliminary Approval Order, as submitted by the parties, was entered in each case, the same notices were given, and the same Joint Motion for Final Approval was filed in each case, on March 19, 2012 in *Gaylor*, and on March 23, 2012 here. The same briefs were filed in support of these Joint Motions, with names changed, except that the brief in this case against Guardian continued to include the statement, "Here, Plaintiff's Complaint specifically lists the common issues implicated by his claims: ... (b) Whether Defendant is the operator of *Comala* ATM's." (Doc. # 37, p. 16) These examples, of course, suggest the use in this case of previously developed forms, but with some inadvertently copied and pasted text.

On June 1, 2012, Judge Thompson issued an Opinion and Order in *Gaylor*, a copy of which is attached hereto as Appendix "A". There, the Plaintiff's team of attorneys asked for fees and costs · of $107,746.00. After a thorough analysis, Judge Thompson awarded a total of $20,000.00.

The undersigned adopts the reasoning of that Opinion and its analysis of the *Johnson*[1] factors in determining a reasonable fee here, declining to engage in an entry-by-entry analysis. Since everything done in this case followed closely the work already done in *Gaylor*, and after considering all circumstances and factors, the court determines a reasonable amount of attorney's fees and costs to be $19,000.00. The court will enter the jointly proposed Order Granting Final Approval of Settlement and the jointly proposed Judgment and Order of Dismissal (after changing the name Danielle Gaylor to Patrick Andrew Hart on page 2) attached as Exhibits C and D in Doc. # 33, with the award of $19,000 inserted as reasonable attorney's fees and costs.[2]

It is, therefore, hereby ORDERED as follows:

1. Plaintiff's Motion (Doc. # 40) is GRANTED in the amount of $19,000.

2. Plaintiff's Motion for Payment of Plaintiff Incentive Award (Doc. # 40) is GRANTED.

3. The Joint Motion for Final Approval of Class Settlement (Doc. # 36) is GRANTED to the extent set out above.

4. Any other outstanding motions are DENIED as moot.

### APPENDIX A

### *OPINION AND ORDER*

Plaintiff Danielle Marie Gaylor, individually and on behalf of all others similarly situated, filed this lawsuit against defendant Comala Credit Union claiming violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* The parties have settled this case and Gaylor now moves for attorney's fees. Comala objects to the requested amount, arguing

---

1. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).

2. The court considers the policy of encouraging class action suits to be filed to be entirely appropriate in some types of cases, such as those involving small, but widespread, actual damages, and those involving dangers to the public. This case, and others like it, however, are not worthy of such encouragement, and the court suggests that it might be well for Congress to consider whether it should continue to impose strict liability for failure to post external notices on ATM machines when the consumer is protected against actual damage by virtue of the onscreen notice and required consent there before the surcharge can be charged.

that $107,746 is an unreasonable fee award because Gaylor's attorneys used recycled and boilerplate briefs. For the reasons that follow, Gaylor's motion for attorney's fees will be granted to the extent that $20,000 will be awarded.

## I. STANDARD FOR ATTORNEY'S FEES

■ When awarding attorney's fees, this court must first calculate the "lodestar" fee: the product of the number of hours reasonably expended to litigate the case and the reasonable hourly rate for work performed by similarly situated attorneys in the community. *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). After determining the lodestar, the court then addresses whether the award should be adjusted upwards or downwards. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565–66, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

■ In conducting this inquiry, the court is guided by the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974).[1] *See also Hensley v. Eckerhart,* 461 U.S. 424, 429–30, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (endorsing the *Johnson* factors). These twelve factors are:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results ob-

tained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

■ The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F.2d at 1303. This burden requires "specific and detailed evidence from which the court can determine the reasonable hourly rate[,] ... records to show the time spent on the different claims, and the general subject matter of the time expenditures." *ACLU v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999). A fee applicant must also exercise "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

## II. BACKGROUND

The EFTA prohibits owners and operators of ATMs from imposing transaction fees without notice. Gaylor filed suit alleging that Comala operated four Montgomery metropolitan-area ATMs that lacked external signs notifying customers that they may incur surcharges. She was represented by the following attorneys: Eric G. Calhoun of Travis & Calhoun, P.C.; B.J. Wade of Skouteris & McGee, PLLC; Nicholas Hughes; and Matthew Alfreds. She then filed an unopposed motion for class certification. Shortly thereafter, the parties negotiated a class settlement, which was submitted to this court.

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

■■■■■■■■

The settlement agreement created a fund in the amount of $42,896.73 to be distributed on a pro-rata basis to every participating class member who submitted a claim; a class member's claim, however, was capped at $100. Gaylor received an incentive payment of $2,500. The settlement provided that any unclaimed funds would be donated to the Public Safety Insurance Fund of Montgomery, Alabama, a charity that provides life-insurance policies to firefighters and police officers. The parties further stipulated that attorney's fees and costs would be awarded separately from the settlement fund.

After preliminarily approving the class and settlement agreement, this court held a fairness hearing. No objections or opt-outs to the class settlement were received. At the hearing, Gaylor's counsel Wade informed the court that approximately ten individuals had filed claims with the settlement fund. Comala, however, disputed this figure and has submitted an email sent by Gaylor's counsel Calhoun stating that no claims were submitted prior to the claim deadline. Gaylor has not offered any proof that the ten claimants mentioned at the fairness hearing exist and, therefore, the court assumes that only Gaylor received money from the settlement fund.

## III. DISCUSSION

After taking into consideration the supplemental and corrected filings,[2] Gaylor's counsel requests the following fee award:

| Attorneys | Hours | Rate | Total |
|---|---|---|---|
| Hughes | 67.55 | $375 | $25,331.25 |
| Alfreds | 48.00 | $375 | 18,000.00 |
| Wade | 35.05 | $550 | 19,277.50 |
| Calhoun | 78.40 | $550 | 43,120.00 |
| Paralegal | 11.45 | $145 | 1,660.25 |
| Court Costs | N/A | N/A | 357.00 |
| TOTAL | | | $107,746.00 |

2. Comala moves to strike the supplemental filings as untimely. Because these filings correct the record and update the fee request for

As an initial matter, the court notes that Gaylor's counsel never add up the total amount of requested fees. In light of the inflated hourly rates and alleged redundant counting discussed below, the court is suspicious that the $107,746 figure is purposefully omitted from Gaylor's briefing in an attempt to obscure the total-fee award sought,

### A. Reasonable Hourly Rates

■ "The rate of attorney's fees is that of the place where the case is filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994). This case was filed in Montgomery, Alabama, and "the court's determination of attorney's fees must also be guided by the prevailing market rate." *Simpleville Music v. Mizell*, 511 F.Supp.2d 1158, 1163 (M.D.Ala.2007) (Thompson, J.).

Gaylor has submitted a declaration from Pamela B. Slate, a local attorney, stating that she is "familiar with fees charged to clients for non-contingent litigation-related work at rates ranging from $350.00 to $550.00 per hour for skilled attorneys and $85.00 to $150.00 for skilled paralegals." Slate Declaration (Doc. No. 42–5) at 3. In light of the attorneys' experience, Slate concludes that an hourly-rate of $375 is appropriate for Hughes and Alfreds and a $550 hourly rate is reasonable for Wade and Calhoun. Both Hughes and Alfreds have practiced law for under seven years. By contrast, Wade and Calhoun have over 20 years of experience.

Comala argues that these rates are unreasonable by the standards of the legal community in Montgomery. Comala points to other attorney's fees cases decided in this district to ascertain a reasonable

services rendered at the fairness hearing, the court will take Gaylor's supplemental filings into account when calculating the fee award.

hourly rate. One example provides: "In this market, the Court has found the range of $300.00 to $ 375.00 applicable for attorneys with over 20 years of experience. It also has found the applicable range for attorneys with 10 years of experience at $ 200.00 to $250.00, and the applicable range for an attorney one to two years of experience at $160.00 to $185.00." *Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F.Supp.2d 1166, 1180 (M.D.Ala.2008) (Watkins, J.). *See also Simpleville Music*, 511 F.Supp.2d at 1163 (using the same fee structure).

The court concludes that Gaylor's fee structure is unreasonable given Montgomery's market rates. Slate's declaration is conclusory and fails to provide different rate structures for newly minted attorneys and seasoned advocates. Slate's declaration also stands in stark contrast to reasonable rates approved by this court: Hughes's and Alfred's rates fall within the range set by this court for an attorney with over 20 years of experience. Although opinion testimony can satisfy the plaintiff's burden to prove reasonable hourly rates, "where there is a lack of documentation, a district court may make an independent judgment based on its own experience and knowledge concerning the rates charges by lawyers of similar skill in similar lawsuits in the same market area." *Miller v. Kenworth of Dothan, Inc.*, 117 F.Supp.2d 1247, 1254 (M.D.Ala.2000) (DeMent, J.). Thus, the court reduces Hughes's and Alfreds's hourly rates to $200 and Wade's and Calhoun's hourly rates to $300. The court also adjusts Gaylor's requested hourly rate for paralegal services to $85, the bottom end of the range provided in Slate's declaration.

**B. Reasonable Hours**

Comala provides numerous examples of alleged double counting by Gaylor's coun-

sel. For example, Comala criticizes Calhoun and Hughes for charging 15.3 and 6.0 hours respectively for drafting the class-certification motion and brief, despite the fact that these documents are boilerplate and have been used in prior litigation. Comala further notes that Gaylor's counsel charge for clerical tasks, such as Hughes's 0.75 hours for filing the complaint. The court declines to engage in an entry-by-entry revision of Gaylor's counsel's time-sheets and speculation as to the amount of time it takes to edit a document. Rather, the court will address the inflated hours and double counting when it considers the *Johnson* factors.

Nevertheless, the court will reduce Gaylor's counsel's hours for two entries. First, Wade has filed a notice of correction stating that the 17 hours, charged on September 6, 2011, for a pretrial conference was in error because no pretrial conference took place that day. But rather than fully confess error, Wade responds that he did not charge for approximately 12 hours traveling to and attending the fairness hearing on April 4, 2012. Because two local attorneys also attended the fairness hearing and Wade's trip from Memphis was superfluous, the court will deduct 17 hours from Wade's fee request. Moreover, the error undermines the credibility of all the hourly entries.

Second, Calhoun has estimated that it will take 20 hours to administer the settlement fund. Given that there were no objections, opt-outs, or claims (other than Gaylor's), the court finds it incredulous that it will take 20 hours to administer the settlement fund.

**C. The *Johnson* Factors**

After adjusting for local hourly rates and subtracting from Wade's and Calhoun's hours, the lodestar figure is calculated as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Hughes | 67.55 | $200 | $13,510.00 |
| Alfreds | 48.00 | $200 | 9,600.00 |
| Wade | 18.05 | $300 | 5,415.00 |
| Calhoun | 58.40 | $300 | 17,520.00 |
| Paralegal | 11.45 | $85 | 973.25 |
| Court Costs | N/A | N/A | 357.00 |
| Total | | | $47,374.25 |

The court, therefore, will use $47,374.25 as the benchmark for determining the fee award. The court finds five of the *Johnson* factors useful in calculating attorneys fees.

■ The first two *Johnson* factors look to the time and labor required and the novelty and difficulty of the questions involved. The court finds it compelling that Gaylor's counsel have recycled filings used in other litigation. Comala has provided numerous complaints and class-certification briefs that are nearly identical to those filed in this case. This court also notes that Gaylor's counsel have recycled briefs in this district. *See, e.g.,* Complaint, *Kirkland v. ServisFirst Bank,* No. 2:10cv713, 2010 WL 4785593 (M.D.Ala. Aug. 20, 2010) (Thompson, J.); Plaintiff's Motion for Attorney's Fees, *Hart v. Guardian Credit Union,* No. 2*.10cv855 (M.D.Ala. Apr. 9, 2012) (Albritton, J.). "An attorney is not entitled to be paid in a case for the work he or another attorney did in some other case." *Barnes,* 168 F.3d at 430. By continuously charging for factual revisions to boilerplate briefs, Gaylor's counsel are not exercising "billing judgment." This court will therefore take into account that many of Gaylor's counsel's hours are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

The third *Johnson* factor examines the skill needed to perform the legal services provided. The court is well aware that class actions are, by definition, complex. But, while the first draft of a complaint or class-certification motion may be time con-suming and complex, the revision of these documents for factual differences does not require the same level of legal experience. Additionally, some of the charged hours are for clerical tasks—such as Hughes's filing of the complaint—that need not be handled personally by an attorney. · *See Surge v. Massanari,* 155 F.Supp.2d 1301, 1305 (M.D.Ala.2001) (McPherson, M.J.) (noting "disapprov[al]" of the billing at a professional hourly rate for services reasonably performed by support staff, whose salaries are included in the lawyer's office overhead"). Thus, the third *Johnson* factor militates in favor of a reduction in the fee award.

The eighth *Johnson* factor evaluates an attorney's performance based on the amount involved and the result obtained. Here, the parties settled the dispute quickly, and Comala did not object to class certification. While the settlement fund is sizeable, the court finds it troubling that no class claimant came forward. Other than the incentive payment to Gaylor, the entire settlement fund will be donated to a local charity. The eighth *Johnson* factor, therefore, suggests a reduction in attorney's fees.

The final *Johnson* factor compares a fee award to similar cases to determine its reasonableness. Comala has provided a useful example: in *Arthur v. Valwood Park Federal Credit Union,* Calhoun and another attorney handled a nearly identical EPTA case. In that case, the defendant agreed to pay $20,000 in attorney's fees. To be clear, the court recognizes that this example involves an unopposed fee award in another jurisdiction—the Northern District of Texas. The court, however, notes that *Arthur* demonstrates that EFTA cases can be litigated successfully by two attorneys, not the duplicitous and redundant efforts marshaled by four lawyers in this case. A comparison to

other cases reveals that the $47,374.25 lodestar fee is most excessive.

The court finds that the five *Johnson* factors discussed above favor a reduction in the lodestar fee. The court further concludes that none of the other *Johnson* factors points toward an fee award. The court, therefore, reduces the $47,374.25 lodestar to $20,000.

\* \* \*

Accordingly, it is ORDERED that plaintiff Danielle Marie Gaylor's motion for attorney's fees (Doc. No. 42) is granted and that plaintiff Gaylor have and recover from defendant Comala Credit Union the sum of $20,000 in attorney's fees and costs are awarded.

DONE, this the 1st day of June, 2012.